HENRY EDWARD AUTREY, UNITED STATES DISTRICT JUDGE
This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment, [Doc. No. 19], and Plaintiff's cross Motion for Summary Judgment, [Doc. No. 22] in this insurance coverage dispute. For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be granted and Defendant's Motion will be denied.
Facts and Background
The parties agree that the material facts are undisputed:
On June 18, 2016 Plaintiff Ashley Russo and Whitley Russo were married and their marriage ended on September 28, 2016 with Whitley Russo's death.
On September 28, 2016, Plaintiff Ashley Russo and Whitley Russo were named insureds under State Farm Mutual Automobile Policy number 402 1203-B22-25A that was in full force and effect providing underinsured motorist coverage in the amount of $ 500,000.00.
On September 28, 2016, Whitley Russo was driving his 1999 black BMW motorcycle eastbound on Ladue Road at, or near, Highway 270 in St. Louis County, Missouri. At the same time, Marilyn Frasure was driving a 2011 bronze GMC Acadia westbound on Ladue Road at, or near, Highway 270 in St. Louis County, Missouri. Ms. Frasure made a left turn into the path of Mr. Russo.
Mr. Russo attempted to brake and laid down the motorcycle on the roadway and separated from the motorcycle. Mr. Russo continued in an eastbound direction and violently collided with the right rear of the Acadia. Mr. Russo's body was separated from the motorcycle for a period of time before his body struck the right rear of the Acadia.
Witness Neal Schroeder testified that Mr. Russo became separated from his motorcycle when it laid down, and that "seconds" after the separation, Mr. Russo collided with the Acadia.
Mr. Russo's motorcycle never made contact with the Acadia.
Mr. Russo suffered extensive injuries as a result of the collision with the Acadia, and was transported to Mercy Hospital, where he died from his injuries.
Plaintiff's damages exceed $ 600,000.00 exclusive of interest and costs.
Plaintiff settled with Frasure, and with State Farm's permission, for her policy limits of $ 100,000.00.
*589 Plaintiff made a claim under her State Farm Policy's underinsured motor vehicle coverage, which provides for the payment of "compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle." State Farm's policy provides coverage when:
Insuring Agreement
We will pay compensatory damages for bodily injury an Insured is legally entitled to recovery from the owner or driver of an underinsured motor vehicle.
The bodily injury must be:
1. sustained by an insured ; and
2. caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle.
State Farm's policy defines an underinsured motor vehicle as:
Underinsured Motor Vehicle means a land motor vehicle:
1. the ownership, maintenance, and use of which is either:
a. insured or bonded for bodily injury liability at the time of the accident; or
b. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and
2. for which the total limits of insurance, bonds, and self-insurance for bodily injury liability from all sources:
a. are less than the amount of the insured's damages; or
b. have been reduced by payments to persons other than the insured to less than the amount of the insured's damages.
State Farm's policy exclusions state, inter alia :
THERE IS NO COVERAGE:
2. FOR AN INSURED WHO SUSTAINS BODILY INJURY :
a. WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU OR ANY RESIDENT RELATIVE IF IT IS NOT YOUR CAR OR A NEWLY ACQUIRED CAR ; OR
b. THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED BY ANY RESIDENT RELATIVE .
This exclusion does not apply to the first person shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while occupying or through being struck by a motor vehicle not owned by one or both of them.
The Policy State Farm defines "occupying" as "in, on, entering, or exiting."
Summary Judgment Standard
Because this is a diversity case, the Court applies state substantive law and federal procedural law. Gasperini v. Center for Humanities, Inc. , 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ; see also Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "When a federal court sits in diversity, it must apply the governing precedent from the state's highest court, and when there is no case directly on point, the federal court must predict how the state supreme court would rule if faced with the same question." Jordan v. Safeco Ins. Co. of Ill. , 741 F.3d 882, 887 (8th Cir.2014). Because the Court sits in diversity, Missouri law governs. Burger v. Allied Prop. & Cas. Ins. Co. , 822 F.3d 445, 447 (8th Cir. 2016). When Missouri law controls, the Court is "bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law." Id. (internal quotations omitted). "Decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but [the Court is] not *590 bound to follow these decisions." Aerotronics, Inc. v. Pneumo Abex Corp. , 62 F.3d 1053, 1068 (8th Cir. 1995).
Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the evidence before the court demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(a) ; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc. , 838 F.2d 268, 273 (8th Cir.1988). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. , 477 U.S. at 323, 106 S.Ct. 2548. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S.Ct. 2548 (quotation marks omitted).
"Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." Jaudes v. Progressive Preferred Ins. Co. , 11 F.Supp.3d 943, 947 (E.D.Mo.2014) (citing Husinga v. Federal-Mogul Ignition Co. , 519 F.Supp.2d 929, 942 (S.D.Iowa 2007) ). Because "the interpretation and construction of insurance policies is a matter of law, ... such cases are particularly amenable to summary judgment." John Deere Ins. Co. v. Shamrock Indus., Inc. , 929 F.2d 413, 417 (8th Cir.1991).
Discussion
"State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." Secura Ins. v. Horizon Plumbing, Inc. , 670 F.3d 857, 861 (8th Cir.2012). Missouri law governs this insurance contract. Under Missouri law, as stated supra , the interpretation of the meaning of an insurance policy is a question of law. Capitol Indem. Corp. v. 1405 Associates, Inc. , 340 F.3d 547, 547 (8th Cir.2003).
The general rules for interpretation of contracts apply to insurance policies. Peters v. Employers Mut. Cas. Co. , 853 S.W.2d 300, 301-02 (Mo.1993) (en banc). When "construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." Ritchie v. Allied Prop. & Cas. Ins. Co. , 307 S.W.3d 132, 135 (Mo.2009). Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole. Id. Courts must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." Dibben v. Shelter Ins. Co. , 261 S.W.3d 553, 556 (Mo.Ct.App.2008).
If the policy language is unambiguous, it must be enforced as written. Id. But if the language is ambiguous, courts should construe the policy in favor of the insured. Id. The fact that the parties disagree over the policy's interpretation does not render a term ambiguous. O'Rourke v. Esurance Ins. Co. , 325 S.W.3d 395, 398 (Mo.Ct.App.2010). "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions."
*591 Seeck v. Geico General Ins. Co. , 212 S.W.3d 129, 132 (Mo. banc.2007). However, a court must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." Todd v. Mo. United Sch. Ins. Council , 223 S.W.3d 156, 163 (Mo.2007).
The threshold question before the Court is whether the Policy provided Plaintiff with underinsured motorist coverage for Whitley's injuries resulting from the accident. "Under Missouri law, 'the insured has the burden of showing that the loss and damages are covered by the policy.' " Breckenridge v. State Farm Mut. Auto. Ins. Co. , No. 06-0721-CV-W-NKL, 2007 WL 2226048, at *3, 2007 U.S. Dist. LEXIS 55535, at *7 (W.D. Mo. July 31, 2007) (citation omitted). In addition, the "interpretation of an insurance policy and the determination whether coverage and exclusion provisions are ambiguous are [ ] questions of law" for the Court to decide. Floyd-Tunnell v. Shelter Mut. Ins. Co. , 439 S.W.3d 215, 217 (Mo. 2014) (citation omitted). If an insurance policy is ambiguous, "it must be construed against the insurer[,]" but absent an ambiguity, the insurance policy must be construed and enforced as written. Seeck v. Geico Gen. Ins. Co. , 212 S.W.3d 129, 132 (Mo. 2007). In Allied Prop. & Cas. Ins. Co. v. Stuart , the court summarized how to review and determine whether an ambiguity exists in an insurance policy under Missouri law:
Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions. In construing the terms of an insurance policy, Missouri courts apply the meaning an ordinary person of average understanding would attach if purchasing insurance ... Ambiguities arise when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions. Ambiguity also arises where an insurance clause appears to furnish coverage but other provisions signal that such coverage is not provided. However, [d]efinitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable. Finally, [a] court may not create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate. 230 F.Supp.3d 969, 972-73 (E.D. Mo. 2017) (internal quotations and citations omitted).
Hibdon v. Farmers Ins. Co., Inc. , No. 4:16-01318-CV-RK, 2018 WL 2272376, at *2 (W.D. Mo. May 17, 2018).
"An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." [ Seeck v. Geico Gen. Ins. Co. , 212 S.W.3d 129, 132 (Mo. banc 2007) ] (internal quotations omitted). Additionally, "it is well-settled that where one section of an insurance policy promises coverage and another takes it away, the contract is ambiguous." Ritchie v. Allied Prop. & Cas. Ins. Co. , 307 S.W.3d 132, 140-41 (Mo. banc 2009). When determining whether an ambiguity exists, "[c]ourts should not interpret policy provisions in isolation but rather evaluate policies as a whole." Id. at 135. Any ambiguity is resolved in favor of the insured. Id. But "[a]bsent an ambiguity, an insurance policy must be enforced according to its terms." Seeck , 212 S.W.3d at 132.
*592 Swadley v. Shelter Mut. Ins. Co. , 513 S.W.3d 355, 357 (Mo. 2017).
The salient provisions of the policy provide:
THERE IS NO COVERAGE:
2. FOR AN INSURED WHO SUSTAINS BODILY INJURY :
a. WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU OR ANY RESIDENT RELATIVE IF IT IS NOT YOUR CAR OR A NEWLY ACQUIRED CAR
The Policy of State Farm defines "occupying" as "in, on, entering, or exiting."
There is no genuine dispute of material fact in dispute. Rather, the parties' dispute is whether the under insured motorist provisions, in the Policy are ambiguous, such that coverage is triggered. Specifically, the parties argue as to whether the term "occupying" as defined is ambiguous.
The Court will examine the specific provision of the Policy Plaintiff claims is ambiguous with the above legal background in mind.
Defendant argues that the exclusion is not ambiguous. Defendant argues that under Loyd v. State Auto Prop. and Cas. Co. , 265 S.W.3d 901 (Mo.App. 2008), there is no coverage because the Loyd Court concluded, under identical circumstances, that when a motorcyclist laid the motorcycle down, separated from it, and subsequently collided with the turning vehicle, the motorcyclist was "occupying" the motorcycle because he had not yet reached his destination.
Defendant's reliance on Loyd , however fails to take into consideration the fact that in Loyd , there appears to have been no argument that the definition of "occupying" is ambiguous. In the instant matter, however, Plaintiff argues that the definition of "occupying," i.e. exiting the motor vehicle, is indeed ambiguous. Under Defendant's interpretation of the meaning of "exit," Whitley had to reach a destination before the exit was complete, whereas, under Plaintiff's interpretation of the term, the "exit" from the motorcycle is at that point when Whitley was no longer in contact with the motorcycle. If Defendant had intended the meaning of "occupying" the vehicle to mean an exit until one reaches ones destination, it could have included that language in the policy. The ordinary meaning of the word "exit" is "to go out or away." See, Merriam-Webster, https://www.merriam-webster.com/dictionary/exit. Once further explanation of the term is necessary, the term itself is not unambiguous. Indeed, the very two positions taken by the parties clearly establish that the definition of "occupying" in the policy exclusion is ambiguous. It is a reasonable interpretation by Plaintiff that Whitley's "exit" from the motorcycle was complete when he laid the motorcycle down and he was no longer in contact with the motorcycle. Under Defendant's interpretation of the term "exit," there is further language to include "until the insured reaches his/her destination." Under the applicable standards of contract interpretation, because an ambiguity exists in the policy terms, the ambiguity must be construed against the insurer. As such, Plaintiff is entitled to coverage under her underinsured motorist policy.
Conclusion
Based upon the foregoing analysis, the Court concludes that the language defining "occupying" in the underinsure motorist policy at issue is ambiguous, and Plaintiff is entitled to the underinsured motorist coverage; Defendant's refusal to pay Plaintiff's claim is therefore a breach of the insurance contract. Plaintiff is entitled to judgment as a matter of law. Judgment in *593 the amount of the policy limits of $ 500,000 will be entered.
Accordingly
IT IS HEREBY ORDERED Plaintiff's Motion for Summary Judgment, [Doc. No. 22], is granted.
IT IS FURTHER ORDERED that Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment, [Doc. No. 19], is denied.
A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.