

# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **LARHONDA JOHNSON,** | ) | |
| | ) | **WD85966** |
| **Respondent,** | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | |
| **AMERICAN FAMILY MUTUAL** | ) | **May 28, 2024** |
| **INSURANCE COMPANY, S.I.,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jerri Jiarui Zhang, Judge**

**Before Division Two:  Thomas N. Chapman, Presiding Judge,**
**Karen King Mitchell, Judge, and W. Douglas Thomson, Judge**

American Family Mutual Insurance Company, S.I. ("American Family") appeals the grant of summary judgment in favor of its policyholder LaRhonda Johnson, and the denial of its motion for summary judgment, finding that it was not entitled to reduce or set off the underinsured motorist coverage limit in the policy by the amount paid by the tortfeasor's liability insurers.  It argues that the policy clearly and unambiguously provides for such a setoff.  The trial court's judgment is reversed, and the case is remanded with directions.

**Factual and Procedural Background**

The facts are undisputed.  On October 24, 2019, Johnson was injured in a motor vehicle accident when another driver ("the tortfeasor") failed to stop her vehicle at a stop sign at the intersection of 59ᵗʰ Street and State Line Road in Jackson County and collided with Johnson's vehicle, causing it to flip and roll.  Johnson incurred damages exceeding $100,000.

At the time of the collision, Johnson was insured by American Family with a policy that included underinsured motorist ("UIM") coverage in the amount of $100,000 per person.  Two insurers of the tortfeasor paid Johnson their policy liability limits of $25,000 and $50,000.  American Family paid Johnson $25,000 in underinsured motorist benefits, claiming it was entitled to a $75,000 reduction or setoff of its UIM policy limit for the payments made by the tortfeasor's insurers.

On September 11, 2020, Johnson filed the underlying action against American Family for declaratory judgment and personal injuries and damages, seeking the full $100,000 in UIM coverage without any reductions (an additional $75,000).  She also alleged a vexatious refusal to pay claim.  The parties filed cross motions for summary judgment, each seeking a determination of whether American Family had paid all UIM benefits owed to Johnson.  The trial court granted Johnson's motion for summary judgment and denied American Family's motion, finding that an ambiguity exists in the UIM policy and that the amount of money Johnson received from the tortfeasor's insurers must be deducted from the total damages determined at trial and not the UIM policy

2

limit.

The parties then proceeded to a jury trial to determine Johnson's damages and her claim of vexatious refusal to pay. The jury returned a verdict in favor of Johnson on her personal injuries claim and found that she was damaged in the amount of $500,000. It found in favor of American Family on the vexatious refusal to pay claim.

On July 7, 2022, the trial court entered judgment in favor of Johnson awarding her damages of $425,000, the amount awarded by the jury ($500,000) reduced by the amount already received from the tortfeasor ($75,000), and ordered American Family to pay Johnson the policy limit of $100,000. It entered judgment in favor of American Family on Johnson's vexatious refusal to pay claim. The trial court entered an amended judgment on September 7, 2022, setting forth the interest rate for post-judgment interest. This appeal by American Family followed.

**Standard of Review**

An appellate court reviews the grant of summary judgment *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* The record is viewed in the light most favorable to the party against whom summary judgment was entered. *Id.* at 116.

Generally, the denial of a motion for summary judgment is not a final judgment and thus not subject to appellate review. *Sprint Lumber, Inc. v. Union Ins. Co.*, 627 S.W.3d 96, 105 n.3 (Mo. App. W.D. 2021). "However, the denial of a motion for

summary judgment may be reviewable when, as in this case, the merits of the motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party." *Id.* (internal quotes and citation omitted).

The interpretation of an insurance policy is a question of law that the appellate court also determines *de novo*. *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009). In construing the terms of an insurance policy, the court applies the meaning that would be attached by an ordinary person of average understanding purchasing insurance. *Id.*

### Point on Appeal

In its sole point on appeal, American Family contends that the trial court erred in granting summary judgment in favor of Johnson and denying its motion for summary judgment because its $25,000 payment to Johnson was all it owed in UIM benefits under the policy. It argues that the policy clearly and unambiguously provides for a setoff of the $75,000 Johnson received from the tortfeasor's liability insurers against the $100,000 UIM limit.

"An ambiguity exists where there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. banc 2017) (internal quotes and citation omitted). "'[W]here one section of an insurance policy promises coverage and another takes it away, the contract is ambiguous.'" *Id.* (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 140-41 (Mo. banc

**4**

2009)).

> An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole. Such a request for a truncated consideration of portions of the policy is unavailing. Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions.

*Id*. (internal quotes and citations omitted). "[A]bsent an ambiguity, an insurance policy must be enforced according to its terms." *Id.* (internal quotes and citation omitted). But any ambiguity is resolved in favor of the insured and against the insurer. *Id.*

In the context of UIM coverage, an ambiguity exists where the policy contains both (1) express language indicating that the insurer will indeed pay up to the declarations' listed limit amount and (2) setoff provisions ensuring that the insurer will never be obligated to pay such amount. *Id.* "The ambiguity arises from the fact that both statements cannot be true; either the insurer will sometimes pay up to the declarations listed limit, or the amount it will pay always will be limited by the amount paid by the underinsured motorist." *Id.*

American Family argues that the policy unambiguously provides for the $75,000 setoff (the amount received from the tortfeasor's insurers), that every relevant section of the policy clearly provides that UIM benefits are reduced by payments made by the tortfeasor's liability insurer, and that the policy does not represent that the UIM limit will be paid in full in addition to the amounts received from the tortfeasor's insurers. Johnson contends that the policy is ambiguous and unclear in setting forth the policyholder's

rights and the insurer's obligation.  She argues that the policy is ambiguous because its

declares $100,000 UIM coverage limit would never be paid.

The relevant provisions of the insurance policy are as follows.  The Declarations

provide, in relevant part:

> UNDERINSURED MOTORIST COVERAGE – BODILY INJURY ONLY
> $100,000 EACH PERSON $300,000 EACH ACCIDENT
> *UIM LIMIT IS REDUCED BY PAYMENT FROM OTHER SOURCES*
> *– ENDORSEMENT 55 LIMITS OF LIABILITY*

(italics emphasis added).  The UIM endorsement (endorsement 55), provides in relevant

part:

> B. INSURING AGREEMENT
>    1. Subject to the provisions contained within each section of this
>       endorsement **we** will pay compensatory damages for **bodily injury**
>       which an **insured person** is legally entitled to recover from the
>       owner or operator of an **underinsured motor vehicle**. *The amount*
>       *of compensatory damages we will pay will never exceed the*
>       *underinsured motorist coverage limits of liability shown on the*
>       *Declarations minus any payment or reduction set forth in Section*
>       *D.3. LIMITS OF LIABILITY.*
>
> * * *
>
> D. LIMITS OF LIABILITY
>    1. The limits of liability for this coverage as shown in the Declarations
>       apply, subject to the following:
>       a. the **bodily injury** liability limit for "each person" is the
>          maximum for all damages sustained by any person as the result
>          of **bodily injury** to that person in any one accident, including but
>          not limited to damages for care, loss of consortium, loss of
>          services or death.
>       b. subject to the **bodily injury** liability limits for "each person", the
>          **bodily injury** liability limits for "each accident" is the maximum
>          for **bodily injury** sustained by two or more persons in any one
>          accident.

2. *The limits of liability for this coverage minus any reductions or offsets set forth in this endorsement are the most that we will pay* regardless of the number of:
   a. **insured persons**;
   b. claims made;
   c. claimants;
   d. vehicles or premiums shown in the Declarations;
   e. vehicles involved in the accident; or
   f. policies issued to **you** or a **relative** by **us** or any other member company of the **American Family Insurance Group of companies**.

   The limits of liability shown in the Declarations may not be added, combined or stacked with the limits shown in the Declarations for any other policy to determine the maximum limits available for each person or for each accident.

   THIS MEANS THAT NO STACKING, COMBINATION OR AGGREGATION OF UNDERINSURED MOTORIST COVERAGES IS ALLOWED UNDER THIS POLICY.

3. *The limits of liability of this coverage will be reduced by:*
   a. *all payments made by or on behalf of the owner or operator of the **underinsured motor vehicle** or organization which may be legally liable.*
   b. all payments made under the liability coverage of this policy.
   c. all payments made or amount payable because of the **bodily injury** under any worker's compensation law, disability benefits law, the pension code, or any similar law, or any private disability insurance or benefits.

4. No **insured person** will be entitled to receive duplicate payments for the same elements of loss. Any amount **we** pay under this coverage to or for an **insured person** will be reduced by any payment made to that person under any other coverage of this policy.

(italics emphasis added).

In this case, the policy does not contain express language indicating that American Family will pay up to the Declarations' listed UIM limit amount. In fact, every relevant section of the policy plainly states that it only will pay the difference between the

declarations' listed limit amount and the amount recovered from the underinsured

motorist.  Specifically, the Declarations set out the $100,000 per person and $300,000 per

accident limit and then provide, "UIM LIMIT IS REDUCED BY PAYMENT FROM

OTHER SOURCES–ENDORSEMENT 55 LIMITS OF LIABILITY[.]"  The Insuring

Agreement of the UIM endorsement (endorsement 55) further provides, "The amount of

compensatory damages we will pay will never exceed the underinsured motorist coverage

limits of liability shown on the Declarations minus any payment or reduction set forth in

Section D.3. LIMITS OF LIABILITY [the setoff provision]."  Finally, section D.2. of the

Limits of Liability section provides, "The limits of liability for this coverage *minus* any

reductions or offsets set forth in this endorsement are *the most that we will pay*…."

(emphasis added).  The policy essentially takes a form that the Missouri Supreme Court

previously stated would be enforceable:

> A policy that plainly states it only will pay the difference between the
> amount recovered from the underinsured motorist and [the declarations'
> listed limit amount] is enforceable.  In such a case, the mere fact that [the
> declarations' listed limit amount] will never be paid out is not misleading,
> for the policy never suggests that this is its liability limit and never implies
> that it may pay out that amount.

*Owners Ins. Co.*, 514 S.W.3d at 617 (quoting *Ritchie*, 307 S.W.3d at 141 n.10).  The

policy here never suggests or implies that American Family will pay the UIM liability

limit if the insured receives payment from or on behalf of the underinsured motorist.  In

fact, the Declarations themselves provide the UIM limit amount is reduced by payments

from other sources as specified in the endorsement.  And the Insuring Agreement and

**8**

Limits of Liability sections of the endorsement plainly state that American Family only will pay the difference between the limit amount and reductions or offsets set out in the policy, including all payments made on behalf of the owner of the underinsured motor vehicle. The setoff provision of the policy does not conflict with the limit of liability amount and, therefore, it is not ambiguous.[1] Because the policy unambiguously provides for a setoff against the limit of liability of amounts paid by the tortfeasor's liability insurers, the trial court erred in entering summary judgment in favor of Johnson and denying American Family's motion for summary judgment. The point is granted.

## Conclusion

The trial court's judgment is reversed. The case is remanded for the trial court to enter judgment in favor of American Family as it has paid all UIM benefits owed under the policy.

_____
Thomas N. Chapman, Presiding Judge

All concur.

---

[1] *Cf. Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690-93 (Mo. banc 2009) (UIM policy was ambiguous where setoff provision of policy conflicted with other provisions in policy stating that the stated limit of liability was "the most we will pay" and that "we will pay up to the limits of liability shown in the schedule"); *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 140-41 (Mo. banc 2009) (UIM policy was ambiguous where setoff provision conflicted with declarations page and the limit of liability provision that stated coverage is provided up to $100,000 per person, $300,000 per accident and that "this is the most we will pay" and that the limit of liability is the maximum it will pay); *Worley v. Cornerstone Nat'l Ins. Co.*, 558 S.W.3d 536, 542-43 (Mo. App. E.D. 2018) (UIM policy was ambiguous where setoff provision conflicted with other provisions stating that the limit of liability shown in the Declarations was "our maximum limit of liability" and "is the most we will pay").