# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3454

_____

John Gohagan; Jessica Gohagan

*Plaintiffs - Appellants*

v.

The Cincinnati Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 24, 2015
Filed: January 6, 2016

_____

Before RILEY, Chief Judge, GRUENDER and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

John and Jessica Gohagan appeal the district court's[1] grant of summary judgment to The Cincinnati Insurance Company ("Cincinnati"). The district court

_____

[1]The Honorable Sarah W. Hays, Chief Magistrate Judge for the Western District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

held that, even if both the Business Owners Package ("BOP") and Commercial General Liability ("CGL") policies issued by Cincinnati covered Mr. Gohagan's injury, the terms of those policies prohibited a single injury from giving rise to more than the $1,000,000 in coverage benefits the Gohagans had already received under the CGL policy. On appeal, the Gohagans argue that they are entitled to coverage under both the BOP and CGL policies and that the policies' anti-stacking[2] provisions are ambiguous and therefore must be construed to allow coverage up to the $1,000,000 each-occurrence limit of both policies, for a total of $2,000,000 of coverage. For the reasons set forth below, we affirm.

I.

In January 2012, Thomas Campbell attempted to remove a tree from a property being developed for a residential subdivision. The tree fell on John Gohagan, who suffered serious injuries as a result. Mr. Gohagan asserted claims against Campbell for the injuries, and Mrs. Gohagan sought compensation from Campbell for loss of consortium. The Gohagans reached a settlement with Campbell, which included Cincinnati's payment of the $1,000,000 per-occurrence limit under the Cincinnati-issued CGL policy held by Campbell and his wife. However, the Gohagans reserved the right to litigate whether Campbell's BOP policy, which also had a $1,000,000 each-occurrence limit, provided additional coverage.

Although the parties stipulated to the fact that the BOP policy was in effect when Mr. Gohagan was injured, Cincinnati contended that the BOP policy's bodily injury liability coverage did not apply to Mr. Gohagan because the injury did not arise

---

[2]"'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy . . . or from multiple coverages provided for within a single policy." *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1131 (8th Cir. 2014) (quoting *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo. App. 1999)).

out of Campbell's ownership, maintenance, or use of certain business premises in Waynesville, Missouri, as the BOP policy required. Cincinnati also argued that, even if the BOP policy were applicable, the BOP and CGL policies' anti-stacking provisions limited coverage to the $1,000,000 already paid by Cincinnati under the CGL policy.

The Gohagans and Cincinnati submitted a joint complaint for declaratory judgment to the district court. The stipulation of facts narrowed the issues for determination to the following: (1) whether coverage under the BOP policy was limited to bodily injury arising out of the ownership, maintenance, or use of the specified Waynesville premises and (2) whether the BOP and CGL policies' anti-stacking provisions prohibited coverage stacking, thereby limiting the combined total of the applicable each-occurrence limit of liability to $1,000,000. After filing the joint stipulation of facts, both parties moved for summary judgment, and the district court granted Cincinnati's motion. The district court determined that fact issues as to the effective date of the BOP policy's geographic-limitation provision prevented summary judgment on the first issue. The court instead based its summary-judgment grant on the second issue, finding that the language of the BOP and CGL policies prohibited the stacking of coverage when both policies covered the same injury. The policies thus limited the maximum coverage for any one occurrence to the each-occurrence limit of $1,000,000. The Gohagans appeal the district court's findings on both issues.

II.

We review both the district court's grant of summary judgment and its interpretation of the insurance policies *de novo*. *Northland Cas. Co. v. Meeks*, 540 F.3d 869, 872 (8th Cir. 2008). Summary judgment is appropriate only when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(c); *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 874 (8th Cir. 2011). "Interpretation of an insurance policy is a matter of state law." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (quoting *Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co.*, 517 F.3d 1032, 1039 (8th Cir. 2008)). Here, Missouri law applies, as Missouri is the forum state, and neither party has raised a choice-of-law claim. *See id.*

Because the Gohagans have already received $1,000,000 from Cincinnati under the CGL policy, their appeal fails if the BOP and CGL policies' anti-stacking provisions limit the combined total of coverage for Mr. Gohagan's injury to $1,000,000. "The interpretation of an insurance policy is a question of law," *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. 1999), to which Missouri courts apply general contract-interpretation principles, *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007). In disputes over the meaning of contract language, "[t]he key is whether the contract language is ambiguous or unambiguous." *Id.* (quoting *Peters v. Emp'rs Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993)). The exercise of interpreting an insurance policy requires that we "ascertain the intention of the parties and . . . give effect to that intention." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012) (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973)). The intention of the parties "is presumptively expressed by the 'plain and ordinary meaning' of the policy's provisions," *id.* (quoting *Mo. Emp'rs Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 625 (Mo. Ct. App. 2004)), "which [we] read 'in the context of the policy as a whole,'" *id.* (quoting *Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998)). "In construing contractual provisions, this court is to avoid an interpretation that renders other provisions meaningless." *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.*, 126 S.W.3d 820, 827 (Mo. Ct. App. 2004).

In this appeal, the Gohagans raise two arguments in an attempt to establish that the BOP and CGL policies are ambiguous as to the extent of coverage. Such ambiguity, the Gohagans argue, would compel the court to construe the disputed policy language against Cincinnati, the insurer. *See Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. 2009) ("Ambiguous policy language must be construed against the insurer.").

The Gohagans first argue that the anti-stacking provisions of the BOP and CGL policies are ambiguous, particularly with respect to the meaning of "aggregate maximum limit of insurance." The BOP policy's anti-stacking provision, labeled "Two or More Policies Issued by Us," provides:

> If this policy and any other policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the *aggregate maximum limit of insurance* under all the policies shall not exceed the highest applicable limit of insurance under any one policy.

(emphasis added). In turn, the anti-stacking provision of the CGL policy, also labeled "Two or More Coverage Forms or Policies Issued by Us," provides:

> If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the *aggregate maximum limit of insurance* under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy.

(emphasis added). The declarations pages of both the BOP and CGL policies refer to an "Each Occurrence Limit" of $1,000,000 and a "General Aggregate Limit" of $2,000,000. However, neither policy provides a definition for "aggregate maximum limit of insurance."

The Gohagans argue that, without a definition expressed in the policy, an ordinary purchaser would understand "aggregate maximum limit of insurance" to refer to the $2,000,000 general aggregate limit. Under such a reading, each of the two policies would afford separately $1,000,000 of coverage for Mr. Gohagan's injury pursuant to the each-occurrence limit, for a total of $2,000,000 of coverage. Cincinnati counters that the "aggregate maximum limit of insurance" is "the sum of all available coverage . . . , the highest applicable limit of insurance" under any one Cincinnati-issued policy. Thus, Cincinnati argues, "the highest applicable limit of insurance is the $1,000,000 that Cincinnati has already paid under the CGL policy." While conceding that Cincinnati's interpretation is "reasonable," the Gohagans assert that the existence of two reasonable interpretations evidences a lack of clarity that obligates us to resolve the ambiguity against Cincinnati.

We see no ambiguity here. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883-84 (8th Cir. 2014) (quoting *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009)). "A contract or provision . . . is not ambiguous merely because the parties disagree over its meaning." *Atlas Reserve Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. Ct. App. 2001).

Here, the anti-stacking provisions viewed in their entirety are unambiguous. By focusing solely on "aggregate maximum limit of insurance," the Gohagans ignore the stipulation that the aggregate maximum limit "shall not exceed the highest *applicable* limit of insurance under any one policy." In this case, the tree-falling incident that resulted in Mr. Gohagan's injury represents the "occurrence" from which our interpretation of the policies flows. Both policies have an each-occurrence limit of $1,000,000. For the occurrence at issue, then, the "highest *applicable* limit of insurance" under either individual policy is equivalent to the each-occurrence limit.

Thus, the aggregate maximum limit of insurance under *both* policies combined may not exceed the each-occurrence limit under *either* policy—in this case, $1,000,000. *See Smith v. Wausau Underwriters Ins. Co.*, 977 S.W.2d 291, 294 (Mo. Ct. App. 1998) (applying an anti-stacking clause nearly identical to those at issue here to limit the "aggregate maximum limit of liability" under two policies issued by the insurance company or affiliate to an amount "not exceed[ing] the highest applicable limit of liability" under either policy). Reading the anti-stacking provisions as a whole, *see Secura Ins.*, 670 F.3d at 861, the Gohagans therefore received the full amount of coverage owed to them under the BOP and CGL policies when Cincinnati paid them $1,000,000 pursuant to the CGL policy.

The Gohagans next contend that, even if the anti-stacking provisions are not ambiguous, the BOP and CGL policies still are ambiguous because the "Other Insurance" provision in each policy establishes coverage that the anti-stacking provision rescinds. These "Other Insurance" provisions read as follows:

> This insurance is primary except [in circumstances not relevant here]. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

Section c., in turn, sets forth the following "Method of Sharing":

> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach *each insurer contributes equal amounts until it has paid its applicable limit of insurance* or none of the loss remains, whichever comes first.

(emphasis added). These "Other Insurance" clauses, the Gohagans argue, affirmatively provide primary coverage under each policy, such that each policy

provides for payment in shares equal to those paid under any other policy. In other words, the Gohagans submit that the BOP and CGL policies individually provide "primary coverage" that the anti-stacking provisions impermissibly limit. *See Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 134 (Mo. 2007) ("Where, as here, an other insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured.").

The Gohagans' interpretation, however, again mistakenly relies on reading an individual provision in isolation from the rest of the policy, an approach that would leave the anti-stacking provisions meaningless. The district court correctly determined that the "Other Insurance" provisions apply when policies covering the same injury are issued by Cincinnati and another insurance company, not when two policies are issued by Cincinnati. Instead, the "Two or More Policies Issued by Us" provisions apply when policies covering the same injury are issued by Cincinnati alone. The Gohagans' interpretation, the district court continued, would render the "Two or More Policies Issued by Us" provisions meaningless, an outcome courts seek to avoid when interpreting contracts. *Nodaway*, 126 S.W.3d at 827. We agree. The Gohagans' attempts to create ambiguity where none exists have failed.

III.

For the reasons set forth above, the district court did not err in finding that the BOP and CGL policies prohibit stacking where both policies cover the same injury,

such that the maximum coverage for Mr. Gohagan's injury is $1,000,000.[3]  We thus affirm the district court's grant of summary judgment to Cincinnati.

_____

<hr>

[3]As our conclusion prevents the Gohagans from receiving more than the $1,000,000 in coverage Cincinnati has already paid them under the CGL policy, we need not reach the issue of whether coverage under the BOP policy was limited to bodily injury arising out of Campbell's ownership, maintenance, or use of the Waynesville premises designated in the policy.