

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| THE ESTATE OF HENRY E. HUGHES, BY ALICE J. HUGHES, PERSONAL REPRESENTATIVE AND ALICE J. HUGHES, | WD78887 |
| **Appellant,** | OPINION FILED: |
| | MARCH 29, 2016 |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| **Respondent.** | |

### Appeal from the Circuit Court of Henry County, Missouri
### The Honorable James Kelso Journey, Judge

### Before Division Four: Alok Ahuja, P.J., Anthony Rex Gabbert, J., Thomas Fincham, Sp. J.

Alice Hughes appeals the trial court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") and denial of her own competing motion for summary judgment. She contends that State Farm was not entitled to summary judgment because there was an ambiguity in her insurance policy as to the underinsured motorist ("UIM") coverage in that the Declarations page provides $50,000 UIM coverage with no limit of liability or coverage, and the insuring agreement and the limit of liability fail to include any language limiting liability or coverage. We affirm the trial court's decision.

### Facts & Background

### A. The Accident & Alice Hughes's Claim Against State Farm

On May 10, 2012, Henry Hughes was involved in a car accident while riding as a passenger in the car of one Raymond Bryant. Hughes later died of the injuries he sustained in the accident. He was survived by his wife, Alice Hughes.

At the time of the accident, Henry and Alice had two vehicles insured by separate policies through State Farm (though neither vehicle was involved in the accident that killed Henry): a 2002 Chevrolet C-1500 pickup truck and a 2008 Buick Lucerne. The insurance policies on both vehicles were essentially identical but for the portions identifying the respective vehicle. Both policies provided UIM coverage with limits of $50,000 for all claims arising out of the bodily injury to one person and $100,000 for all claims arising out of bodily injury in one accident. However, the Policy Booklet for both policies contained an "anti-stacking" provision that prohibited the Hughes from "stacking" UIM coverage from the two policies for a single claim.[1]

Following Henry's fatal accident, Alice made a UIM claim with State Farm for an amount in excess of $50,000. State Farm paid out the full $50,000 UIM limit to Alice under the Buick policy, but refused to pay an additional $50,000 under the Chevy policy based on the UIM anti-stacking language found in the Policy Booklets.

Alice then filed suit against State Farm, arguing that the UIM anti-stacking provisions were ambiguous and should therefore be construed against State Farm. Alice filed a motion for summary judgment that was denied by the trial court. State Farm also filed a competing motion for summary judgment, arguing that the UIM anti-stacking provisions were not ambiguous and

---

[1] "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009) (internal citation omitted).

that State Farm had therefore fulfilled its coverage obligations to Alice. The trial court granted State Farm's motion. This appeal follows.

## B. The Policy Language[2]

The Declarations page of each policy sets out information unique to that policy, including the policy number, the named insureds, identification of the vehicle, the coverages purchased, and the amount of each coverage. Both Declarations pages also state that the entire policy consists of "[the] Declarations page, the Policy Booklet – Form 9825A, and any endorsements that apply, including those issued . . . with any subsequent renewal notice."

Both policies are accompanied by identical Policy Booklets (also labeled as "Form 9825A"). The Booklet describes the policy's definitions, exclusions, endorsements, and other miscellaneous provisions in greater detail. The Booklet's contents page states that terms governing UIM vehicle coverage begin on page 15. That section states the following terms:

> **Insuring Agreement**
>
> *We* will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***underinsured motor vehicle***. The ***bodily injury*** must be:
>
> 1. sustained by an ***insured***; and
>
> 2. caused by an accident that involves the operation, maintenance, or use of an ***underinsured motor vehicle*** as a motor vehicle.
>
> *We* will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the ***insured's bodily injury*** have been used up by payment of judgments or settlements, or have been offered to the ***insured*** in writing.

---

[2] The relevant policy terms described herein are identical in both the Chevy and Buick policies but for the description of each vehicle in its respective policy. Boldface and italics are included as they appear in the Policy Booklet text.

3

That section also provides the following limitation on UIM coverage (which is also called an "anti-stacking" provision):

**If Other Underinsured Motorist Coverage Applies**

1. If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to **you** or any **resident relative** by the State Farm Companies apply to the same **bodily injury**, then:

> a. the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

> b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any of the policies. **We** may choose one or more policies from which to make payment.

### Standard of Review

The propriety of summary judgment is an issue of law which we review *de novo. ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom summary judgment was entered. *Id.* Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id. See also* Rule 74.04(c)(6). "The interpretation of an insurance policy and the determination whether coverage and exclusion provisions are ambiguous are also questions of law that this Court reviews *de novo.*" *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. banc 2014).

Although orders denying a motion for summary judgment are generally not reviewable because they are not final judgments, such orders *are* reviewable when they are essentially intertwined with a related order granting summary judgment. *See Sauvain v. Acceptance Indem. Ins. Co.*, 339 S.W.3d 555, 568-69 (Mo. App. W.D. 2011). Here, both Hughes's and State Farm's competing motions for summary judgment hinged on the same critical issue: whether the UIM

4

anti-stacking provision in Hughes's Chevy policy was ambiguous. Therefore, we review the trial court's decision regarding these opposing motions as one.

## Analysis

In her sole point on appeal, Hughes argues that the trial court erred in granting State Farm's motion for summary judgment because the Chevy policy's terms regarding the stacking of UIM coverage were ambiguous and therefore should have been construed against State Farm. Specifically, she contends that the policy is ambiguous in that its Declarations page provides $50,000 of UIM coverage with no limit of liability or coverage, and the insuring agreement and limit of liability fail to include any language limiting liability or coverage. However, when the entire policy is read as a whole and relevant provisions are construed together, we do not find there to be any ambiguity present in the UIM anti-stacking terms.

As with other types of contracts, the key to interpreting insurance contracts is determining whether the language is or is not ambiguous. *See Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). "When there is ambiguity in an insurance policy, the Court must interpret the policy in favor of the insured." *Id.* (internal citation omitted). However, unambiguous insurance policies should be enforced as written. *Id.* An insurance policy is ambiguous "when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. banc 1992). To determine whether the contract's language is clear, courts consider the language "in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Id*. The courts should not interpret policy provisions in isolation, but instead should evaluate policies as a whole. *See Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009); *Dutton v. Am. Fam. Mut. Ins. Co.*, 454 S.W.3d 319, 324 (Mo. banc 2015).

The essential terms of an insurance contract are usually stated in abbreviated form on the "Declarations" page of the policy. *See Todd*, 223 S.W.3d at 160. The rest of the policy often contains terms that limit or narrow the broad coverage stated in the Declarations page, such as definitions, exclusions, endorsements, and other miscellaneous provisions. *Id.* at 163 ("Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions."). Such limiting terms do not necessarily render the policy ambiguous so long as any conflicting clauses may be reasonably reconciled with the policy as a whole. *See id.* at 162-63. *See also Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. banc 2014); *Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 546 (8th Cir. 2015) (citing *Naeger v. Farmers Ins. Co.,* 436 S.W.3d 654, 660 (Mo. App. E.D. 2014)) ("There is no requirement that a limitation or exclusion appear on the declarations page absent policy language stating otherwise.").

So-called "anti-stacking" provisions are a common type of policy limitation that come into effect when an insured holds more than one policy with the same insurer. Such provisions limit the coverage that a policyholder may apply to a single claim from more than one policy in order to achieve a higher amount of coverage. Although Missouri law prohibits anti-stacking policies that disallow the stacking of **un**insured motorist coverage, Missouri law does permit anti-stacking policies that disallow the stacking of **under**insured motorist coverage. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 368 S.W.3d 174, 179 (Mo. App. W.D. 2012). Thus, "if the policy language is unambiguous in disallowing [UIM] stacking, the anti-stacking provisions are enforceable." *Id.*

Hughes now argues that the UIM anti-stacking provision contained in the Policy Booklet is ambiguous and unenforceable because "[t]here is nothing on the Declaration Page that would

6

show that there is a limit of liability or limit of [UIM] coverage in the event that one has two policies with State Farm."[3]  State Farm argues that the provision is unambiguous and enforceable because its UIM anti-stacking terms are clear and because the Declarations page clearly indicates that the policyholder should look to the Policy Booklet for a full list of limits and exclusions on coverage.  Ultimately, a plain reading of the policy terms in question does not lead us to conclude that the UIM anti-stacking provision is ambiguous.  Therefore, we find that the UIM anti-stacking provision was enforceable to limit Hughes's recovery under the Chevy policy, and the trial court did not err in granting State Farm's motion for summary judgment.

We first note that Hughes does not articulate some plausible alternative reading of the UIM anti-stacking provision that would render it ambiguous, as is required to establish an ambiguity under Missouri law.  *See*, *e.g.*, *Taylor v. State Farm Mut. Auto. Ins. Co.*, 368 S.W.3d 174, 179 (Mo. App. W.D. 2012); *Nat'l Union Fire Ins. v. Maune*, 277 S.W.3d 754, 759 (Mo. App. E.D. 2009).  Instead, Hughes simply asks us to restrict our interpretation of the policy to a reading of the coverage outlined in the Declarations page without considering the clear limitations and exclusions expressed in the Policy Booklet.  Under Missouri law, however, we must read the policy as a whole and may not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists."  *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007) (internal citation

---

[3] In support of her argument, Hughes cites extensively to two cases in which this Court found UIM coverage provisions to be ambiguous and unenforceable: *Fanning v. Progressive Northwestern Ins. Co.,* 412 S.W.3d 360 (Mo. App. W.D. 2013) and *Miller v. Ho Kun Yun*, 400 S.W.3d 779 (Mo. App. W.D. 2013).  However, both of those cases are distinguishable from Hughes's situation based on differences in the policy language and because neither case dealt with an anti-stacking provision of the type presented here.

omitted).  Accordingly, as the Declarations page clearly indicates, we must read both that page and the Policy Booklet together to discern the full extent and limits of the Hughes's policy.[4]

Additionally, Hughes fails to establish the existence of an ambiguity in the anti-stacking provision because she fails to demonstrate that the policy's terms are duplicitous, indistinct, or uncertain.  *See Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) ("An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy.").  Upon consideration of the whole policy, we find the anti-stacking provision is unambiguous because a lay reader could clearly ascertain its purpose and effect from the provision's title and terms.

Here, the Declarations page sets out the broad terms of coverage, but informs the policyholder that the related Policy Booklet contains additional exceptions and endorsements to the policy.  The Policy Booklet then tells the insured where the provisions relating to UIM coverage are located, including provisions that address the application of additional policies to a single claim.  Specifically, the provision that precludes UIM stacking sets out two rules in clear and straightforward language: (1) the multiple coverage limits will not be added together; and (2) the policy with the highest coverage limit determines the most that is available for a single claim.

---

[4] The terms found on the Declarations page are not the sum total of the policy's coverage; it explicitly informs the policyholder that he or she must look to the Policy Booklet for a list of additional terms, exclusions, limitations, and etc.  The fact that the Declarations page of the policy does not specifically state the UIM anti-stacking limitation is unremarkable and does not render the terms ambiguous.  A Declarations page is brief by design and it does not state the vast majority of all limitations and exceptions to any given policy.  *See Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. banc 2014) ("The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage."); *Peters v. Farmers Ins. Co.,* 726 S.W.2d 749, 751 (Mo. banc 1987) ("The 'declarations' are introductory only and subject to refinement and definition in the body of the policy.").  The Declarations page at issue here is similar to most in that it outlines the broad parameters of the coverage provided, then directs the insured's attention to the Policy Booklet for a more thorough explanation of terms and exceptions.

State Farm followed these rules in making its payment for the full UIM limit of the Buick policy and it therefore met its obligation to provide UIM coverage under both policies.

Simply put, we do not find there to be any ambiguity in the identical anti-stacking provisions found in both the Buick and Chevy policies. The anti-stacking provisions clearly indicated a limitation on the stacking of UIM coverage from more than one policy to a single claim and State Farm fully met its obligation to provide UIM coverage under one policy. Hughes has presented no reasonable alternative interpretation of the policy terms in question and has therefore failed to meet her burden of proving an ambiguity in the insurance contract. Hughes's point on appeal is denied.

## Conclusion

Because we conclude that the relevant language of the UIM anti-stacking provision is unambiguous, we affirm the trial court's decision to grant State Farm's motion for summary judgment and to deny Hughes's motion for summary judgment.

_____
Anthony Rex Gabbert, Judge

All concur.

9