# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2227
_____

Maureen Johnson

*Plaintiff - Appellant*

v.

Safeco Insurance Company of Illinois

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 23, 2020
Filed: December 18, 2020
_____

Before SMITH, Chief Judge, BENTON and KOBES, Circuit Judges.
_____

SMITH, Chief Judge.

Maureen Johnson sued Safeco Insurance Company of Illinois ("Safeco") after Safeco denied her underinsured motorist insurance (UIM) coverage. Safeco denied coverage because Johnson had already received the maximum UIM coverage available from another insurer. The district court[1] granted summary judgment to

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Safeco after concluding Safeco had satisfied its contractual obligation because Johnson had already received the highest applicable limit of UIM coverage to which she was entitled. We affirm.

## I. *Background*

Johnson was severely injured in a vehicle collision in September 2016. At the time of the accident, she was driving her then-employer's 2005 Ford E150 Econoline Van. The employer, TestAmerica Environmental Services, LLC, insured the van through Travelers Insurance Company ("Travelers"). Among other coverages, the Travelers auto policy provided $1,000,000 in UIM coverage. The other driver in the collision, Alma Xiloj, had auto insurance coverage through Trader's Insurance Company ("Trader's"). The Trader's policy had a bodily injury liability limit of only $25,000.

Johnson and her husband had automobile insurance coverage for their personal vehicles through Safeco. Safeco's policy provided coverage for three vehicles: a 2013 Ford F150, a 2005 Ford Focus, and a 2015 Ford Explorer. For each insured vehicle, the policy provided coverage of $250,000 per person in UIM coverage. None of these three vehicles were involved in the accident.

The Safeco policy section titled "Additional Coverages," states, in relevant part:

INSURING AGREEMENT

A.    We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

1.    Sustained by that insured; and
2.    Caused by an accident.

-2-

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

We will pay under this coverage only if 1. or 2. below applies:

1.    The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements . . . .

.    .    .

LIMIT OF LIABILITY

A.    The limit of liability shown in the Declarations for "each person" for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death (including loss of consortium and wrongful death), arising out of bodily Injury sustained by any one person in any one accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1.    Insureds;

2.     Claims made;

3.    Vehicles or premiums shown in the Declarations; or

4.    Vehicles involved in the accident.

.    .    .

OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of underinsured motorist coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis.

2. Any underinsurance motorist coverage we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist insurance providing coverage on a primary basis. However, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto.

3. If the underinsured motorist coverage under this policy is provided:

    a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing underinsured motorist coverage on a primary basis. Our share is the proportion that our underinsured motorist limit of liability bears to the total of all applicable underinsured motorist limits of liability for coverage provided on a primary basis.

    b. On an excess basis, we will pay only our share of the loss that must be paid under underinsured motorists insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability for underinsured motorists coverage bears to the total of all applicable limits of liability for underinsured motorist coverage provided on an excess basis.

Compl., Ex. A at 39–41, *Johnson v. Safeco Ins. Co. of Ill.*, No. 4:18-cv-000645-ODS (W.D. Mo. 2019), ECF No. 1-1 (emphasis omitted).

Johnson sued Xiloj and entered a covenant not to execute in May 2018. Safeco and Travelers both consented to Johnson accepting $25,000 from Xiloj. It is undisputed that Travelers, the insurer for the vehicle Johnson was driving at the time of the accident, served as Johnson's primary UIM coverage.[2] After a bench trial, the state court entered a judgment of $5,000,000 against Xiloj. Trader's paid Johnson $25,000, the applicable limit under Xiloj's policy.

Johnson then contacted Safeco and Travelers, asking for $1,000,000 from each company. Travelers sent Johnson $1,000,000. Safeco, however, declined to pay. It determined that its UIM coverage applied to Johnson only on an excess basis. Safeco noted that Travelers provided primary coverage. Consequently, Johnson had already received the highest applicable limit of UIM coverage from Travelers and was not entitled to more from Safeco. Johnson sued in federal court to determine Safeco's obligations under the policy. Both parties moved for summary judgment. Johnson argued that she was entitled to at least $250,000 from Safeco and, further, that she should be able to recover the limits for each of the three vehicles covered under Safeco's policy for a total of $750,000.[3] Safeco argued that its policy

---

[2]Prior to entering the covenant not to execute with Xiloj, Johnson's attorney contacted Safeco's attorney asking Safeco to consent to her accepting $25,000 from Xiloj. Johnson's attorney wrote: "I presume you have no issues with this—since Traveler's [sic] is holding the primary policy." Pl.'s Suggestions Supp. Mot. Summ. J., Ex. I at 2, *Johnson v. Safeco Ins. Co. of Ill.*, No. 4:18-cv-00645-ODS (W.D. Mo. 2019), ECF No. 27-9. Safeco's attorney consented and specified: "As you mention, you would want to secure Travelers' consent as well as they are handling the UIM claim for Mrs. Johnson under their primary policy." *Id.* at 1.

[3]On appeal, Johnson withdrew her claim that she was entitled to stack the coverage of each vehicle because our recent decision in *Strain v. Safeco Insurance Co. of Illinois*, 776 F. App'x 382 (8th Cir. 2019) (per curiam), settled the issue. *Strain* held that Safeco's policy unambiguously prohibited stacking of coverage from multiple UIM policies from the same insurer. *Id.* at 383.

precluded Johnson from receiving more than the highest applicable limit of UIM coverage—an amount she had already recovered from Travelers.

The district court granted summary judgment to Safeco. It concluded that Safeco's policy unambiguously precluded Johnson from recovering more than the maximum limit of UIM coverage from either Safeco or Travelers.[4] It determined that Johnson could receive no more than $1,000,000 in total UIM coverage because that was the "highest applicable limit." As a result, Safeco owed her no additional funds in excess of that amount because she had already recovered the maximum limit of UIM coverage from Travelers. The district court also explained that this did not render Johnson's UIM coverage from Safeco illusory because it would have provided coverage had Travelers not already provided Johnson with the highest applicable limit of UIM coverage.

## II. *Discussion*

Johnson appeals, arguing that the district court erred in granting summary judgment to Safeco because its policy contains an impermissible set-off of coverage and is ambiguous.

"We review both the district court's grant of summary judgment and its interpretation of the insurance policies *de novo*." *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1015 (8th Cir. 2016). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We view the record most favorably to the nonmoving party and draw all reasonable inferences in that party's favor. *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1131 (8th Cir. 2014). Interpretation of an insurance policy is a matter of state law, and we review the district court's interpretation of state law de novo. *Id.* The parties agree that Missouri law applies.

---

[4]The district court did not substantively address this second issue of "intra-policy stacking" because its holding on the first issue was dispositive.

### A. *"Set-off" versus "Stacking"*

We begin by addressing Johnson's argument that this case involves a "set-off" of coverage as opposed to "stacking."

> "Stacking" refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle.

*Id.* (quoting *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999)). A "set-off," on the other hand, generally occurs when an insurance company reduces the amount it owes by another amount— usually the amount owed by the tortfeasor. *See Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 616 (Mo. 2017) (en banc); *see also* 12 Steven Plitt et al., *Couch on Insurance* § 169:10 (3d ed. 2020). Missouri courts particularly scrutinize set-offs if the effect of the provision is to offer coverage at one point and then take it away or reduce it elsewhere in the policy. *Nationwide Ins. Co. of Am. v. Thomas*, 487 S.W.3d 9, 12– 13 (Mo. Ct. App. 2016).

Johnson claims that Safeco's policy creates a set-off by reducing its UIM coverage by the amount she received from Travelers. We disagree. Safeco did not reduce the amount it owed Johnson by the amount she received from Travelers or from Xiloj. Rather, the Safeco policy states that where multiple UIM policies apply, as in Johnson's case, recovery "may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis." Compl., Ex. A at 41. This means that excess coverage (here, from Safeco) can combine with primary coverage (here, from Travelers) to amount to the highest limit for any one vehicle.

Johnson seeks to recover the highest applicable limits of two different policies. In other words, she seeks to stack the Travelers UIM coverage ($1,000,000) and the Safeco UIM coverage ($250,000), for a total of $1,250,000. Therefore, we

conclude that this case does not involve a set-off within a policy but stacking of separate policies.

## B. *Safeco's Policy Precludes Stacking*

Next, we address Johnson's argument that Safeco's policy contains an ambiguity in describing its UIM coverage when coverage from another insurer also applies. Missouri courts apply general rules of contract interpretation when interpreting an insurance policy. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007) (en banc). "The exercise of interpreting an insurance policy requires that we ascertain the intention of the parties and give effect to that intention. The intention of the parties is presumptively expressed by the plain and ordinary meaning of the policy's provisions . . . ." *Gohagan*, 809 F.3d at 1015 (cleaned up). If the language of a policy is clear and unambiguous, we must enforce it as written. *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. 2019) (en banc). If a policy is ambiguous, we must interpret the policy in favor of the insured. *Todd*, 223 S.W.3d at 160.

The "key" question, therefore, is whether the contract language is ambiguous. *Gohagan*, 809 F.3d at 1015. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Seaton*, 574 S.W.3d at 247 (quoting *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. 2015) (en banc)). "Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (en banc) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc)). "Because Missouri does not require UIM coverage, 'the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer.'" *Daughhetee*, 743 F.3d at 1131 (quoting *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. 1991) (en banc)). "[I]f the policy language is unambiguous in disallowing stacking, the anti-stacking provisions are enforceable. If, however, policy language is ambiguous as to stacking, it must be construed against the insurer, and stacking will be allowed." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009) (en banc) (cleaned up).

The "Other Insurance" provision of Safeco's policy describes when Safeco's UIM applies and how much it will pay when "other applicable insurance" also applies. Under the plain language of paragraph 1, the total UIM coverage Johnson receives from any UIM coverage cannot "exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis." Compl., Ex. A at 41. The limit of liability under Travelers's coverage was $1,000,000, and the limit of liability under Safeco's coverage was $250,000. Therefore, Johnson's "highest applicable limit" of UIM coverage was $1,000,000. Johnson received this amount from Travelers. Under paragraph 2, because Johnson was driving a vehicle she did not own at the time of the accident, Safeco's policy applied as "excess over any collectible underinsured motorist insurance providing coverage on a primary basis." *Id.* If Travelers, which applied on a primary basis, had paid Johnson less than $1,000,000, Safeco would have paid the difference, up to Safeco's $250,000 applicable limit. But because Travelers already paid Johnson the highest applicable limit, $1,000,000, there was no remaining responsibility for Safeco to pay on an excess basis. We agree with the district court that this provision precludes Johnson from recovering both the highest limit from Safeco and the highest limit from Travelers.

Johnson argues that the Safeco policy is ambiguous because its language is susceptible to different interpretations. We address each of her proposed interpretations in turn. First, Johnson urges us to read the "Other Insurance" provision as applying only to multiple policies issued by Safeco, not Safeco and another insurer. She focuses on the phrase "one or more policies" in that provision and attempts to draw a parallel to another provision titled "Two or More Autos Insured; Two or More Auto Policies" in the "General Provisions" section of the policy. The relevant portion of that provision states, "If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto." Compl., Ex. A at 38. Johnson contends that because the "Two or More Autos Insured; Two or More Auto Policies" provision describes

-9-

multiple policies issued "to you by us"—i.e., to you by Safeco—the "one or more policies" language in "Other Insurance" must as well. She essentially argues that the phrase "one or more policies" is so similar to "two or more auto policies" that the average insured would assume that they both refer to policies issued by Safeco only.

We decline to adopt this interpretation. "A contract or provision . . . is not ambiguous merely because the parties disagree over its meaning." *Gohagan*, 809 F.3d at 1016 (alteration in original) (quoting *Atlas Reserve Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. Ct. App. 2001)). Johnson must articulate a "plausible alternative reading." *Estate of Hughes v. State Farm Mut. Auto Ins. Co.*, 485 S.W.3d 357, 362 (Mo. Ct. App. 2016). The "Two or More Autos Insured; Two or More Auto Policies" provision in the "General Provisions" unequivocally describes another policy "issued to you by us." Compl., Ex. A at 38. The "Other Insurance" section, on the other hand, contains no such language. It also does not contain any other language that would limit its application to policies issued by Safeco. A plain reading compels the conclusion that the phrase "other applicable [UIM] insurance available under one or more policies" in "Other Insurance" encompasses any other UIM insurance, whether from Safeco or another insurer. Compl., Ex. A at 41.

Johnson contends that this interpretation creates an inconsistency between the "Other Insurance" and "General Provisions." We disagree. Our decision in *Gohagan* is instructive. There, our circuit addressed similar language and concluded similarly. The insurance policies at issue in *Gohagan* contained a provision titled "Two or More Policies Issued by Us" and a separate "Other Insurance" section addressing the insurer's obligation if another insurance policy applied on a primary basis. *Gohagan*, 809 F.3d at 1017. The panel concluded that "the 'Other Insurance' provisions apply when policies covering the same injury are issued by [the defendant insurer] and another insurance company, not when two policies are issued by [the defendant insurer]" and that "the 'Two or More Policies Issued by Us' provisions apply when policies covering the same injury are issued by [the defendant insurer] alone." *Id.* Further, we explained that interpreting these provisions otherwise "would

-10-

render the 'Two or More Policies Issued by Us' provisions meaningless, an outcome courts seek to avoid when interpreting contracts." *Id.* Here, too, Johnson's interpretation would render the "Two or More Autos Insured; Two or More Auto Policies" provision meaningless.

Second, Johnson urges us to interpret the "Other Insurance" provision as providing the highest applicable limit for primary coverage *plus* the highest applicable limit for excess coverage. She argues that paragraph 1 suggests to a reasonable insured that they should analyze primary and excess coverage separately, first assessing the highest applicable limit for primary coverage and then doing the same for excess coverage. Under this interpretation, Johnson would recover $1,000,000 (the highest applicable limit from Travelers) in primary coverage, *plus* $250,000 (the highest applicable limit from Safeco) in excess coverage.[5]

This second argument by Johnson also runs contrary to our decision in *Gohagan*. There, the provision labeled "Two or More Policies Issued by Us" stated:

> If this policy and any other policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the *aggregate maximum limit of insurance*

---

[5]Johnson argues that stacking is inherent to "excess coverage" clauses and that this undercuts Safeco's entire argument. She directs us to the treatise *Couch on Insurance*, which explains that "excess policies have an element of 'stacking' inherent in their very nature and is usually articulated in terms of the primary and excess coverages *theoretically amounting to a single coordinated coverage or policy*." 12 *Couch on Insurance* § 169:8 (emphasis added). But Johnson leaves out the emphasized portion, which undercuts her own claim by demonstrating how primary and excess coverages operate together: rather than separately providing the insured with the full limit of liability under each policy, they "amount[] to a single coordinated coverage or policy." *Id.* Here, the Travelers and Safeco policies work together to establish Johnson's highest applicable UIM policy. Safeco did not supplement Travelers's contribution in this case because Travelers already paid Johnson the full $1,000,000. Although this may have "an element of 'stacking' inherent in [its] very nature," *see id.*, this is not the type of stacking that Johnson seeks. She seeks to place the maximum of one policy onto the maximum of another.

-11-

under all the policies *shall not exceed the highest applicable limit of insurance under any one policy*.

809 F.3d at 1016 (second emphasis added). This court held that, "viewed in [its] entirety," this provision was "unambiguous": "the aggregate maximum limit of insurance under *both* policies combined may not exceed the each-occurrence limit under *either* policy." *Id.* at 1016–17. Similarly, in *Taylor v. State Farm Mutual Automobile Insurance Co.*, the Missouri Court of Appeals held that a provision stating "the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability" unambiguously precluded stacking. 368 S.W.3d 174, 179, 181 (Mo. Ct. App. 2012) ("[W]e fail to see how an average insurance consumer would read this language to provide for coverage up to the policy limits from both policies for the damages in this case."). Although Safeco's policy is not identical to the language in *Gohagan* and *Taylor*, the same reasoning applies. Under Safeco's "Other Insurance" provision, paragraph 1 provides that "any recovery" under all applicable policies "may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis." Compl., Ex. A at 41. This means that any recovery from Safeco's and Travelers's policies combined may not exceed the highest applicable limit from one policy—whichever one is higher between the two.

Johnson's interpretation is also untenable because it would render the "Other Insurance" provision meaningless. If an insured could always recover the highest applicable limit from both the primary and excess policies, there would be no need for an entire provision distinguishing between the two. We seek to avoid such an outcome. *See Gohagan*, 809 F.3d at 1017; *see also Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295, 299 (Mo. Ct. App. 2002) (explaining that "[p]roper interpretation requires that we seek to harmonize all provisions of the policy to avoid leaving some provisions without function or sense" and rejecting an interpretation that would "render[] the endorsement's set-off provision meaningless").

Consistent with her interpretation, Johnson would have us read the words "excess over" in paragraph 2 of "Other Insurance" to mean "on-top-of." Courts have found that "excess coverage" clauses can cause ambiguity when they could be interpreted by an insured to mean that the different UIM policies are "excess to the other, and, therefore, may be stacked." *Ritchie*, 307 S.W.3d at 138; *Manner v. Schiermeier*, 393 S.W.3d 58, 65 (Mo. 2013) (en banc) (quoting *Ritchie*, 307 S.W.3d at 138); *see also Jordan v. Safeco Ins. Co. of Ill.*, 741 F.3d 882, 886–87 (8th Cir. 2014) (applying *Ritchie*'s holding and concluding that "excess over" language appeared to permit stacking). In *Ritchie* and *Manner*, for example, the Missouri Supreme Court concluded that the "excess coverage" language could be read by the average policyholder as providing an exception to any prior anti-stacking provision for the situation in which the injured person was driving a vehicle they did not own. *Ritchie*, 307 S.W.3d at 139; *Manner*, 393 S.W.3d at 65.[6] Here, however, an additional sentence follows the "excess over" language: "However, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto." Compl., Ex. A at 41. We do not interpret policy provisions in isolation. *Ritchie*, 307 S.W.3d at 135. Read in its entirety, paragraph 2 reflects the anti-stacking language in paragraph 1. It provides reinforcement for it rather than an exception to it.

Evaluating the "Other Insurance" provision as a whole and viewing it in context with the rest of Safeco's policy, we conclude that the "Other Insurance" provision does not permit Johnson to combine her primary and excess UIM coverage such that she would recover more than the highest applicable one-vehicle limit—$1,000,000 in her case. We read the provision as unambiguously limiting the total of Johnson's UIM coverage—from Safeco and Travelers combined—to the highest applicable limit.

---

[6]In *Ritchie*, the provision at issue stated, "Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage." 307 S.W.3d at 137 (emphasis omitted). In *Manner*, the provision at issue stated, "But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance." 393 S.W.3d at 65 (emphasis omitted).

## C. *Safeco's Coverage is Not Illusory*

Johnson contends that if the policy does prohibit her from recovering from both Safeco and Travelers in this instance, it does so in a confusing and misleading way. She argues that Safeco essentially grants coverage and then attempts to take it away in "Other Insurance" because the rest of the policy does not mention any limits to Safeco's UIM coverage. "[W]here one section of an insurance policy promises coverage and another takes it away, the contract is ambiguous." *Craig*, 514 S.W.3d at 617 (quoting *Ritchie*, 307 S.W.3d at 140–41). An ambiguity exists if two provisions in the policy cannot both be true. *Id.*; *see also Worley v. Cornerstone Nat'l Ins. Co.*, 558 S.W.3d 536, 541 (Mo. Ct. App. 2018). However, a broad provision for coverage followed by subsequent narrowing language does not create an ambiguity. *Todd*, 223 S.W.3d at 162–63.

Johnson is correct that the policy declarations, "Limit of Liability" provision, and "Exclusions" provision do not mention the limit found in "Other Insurance." This does not create illusory coverage, however, because Safeco's policy never promises the maximum coverage limit in the first place. The Declaration Pages list the UIM coverage limit of $250,000 per vehicle. But "[t]he declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." *Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 546 (8th Cir. 2015) (quoting *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. 2014) (en banc)). "[D]eclarations are 'introductory only and subject to refinement and definition in the body of the policy.'" *Craig*, 514 S.W.3d at 617 (quoting *Peters v. Farmers Ins. Co.*, 726 S.W.2d 749, 751 (Mo. 1987) (en banc)). They do not grant coverage. *Id*. Therefore, the Declaration Pages in Safeco's policy are subject to further refinement and do not conflict with later provisions explaining when Safeco will—or will not—pay the maximum limit.

Similarly, the "Limit of Liability" provision unambiguously states that the amount listed in the Declaration Pages is the maximum amount it will pay:

> The limit of liability shown in the Declarations for "each person" for [UIM] Coverage is our maximum limit of liability for all damages . . . .

> Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for [UIM] Coverage is our maximum limit of liability for all damages . . . .

Compl., Ex. A at 40. Missouri courts have held that Limit of Liability provisions in an insurance policy cannot be construed as setting an exact or a minimum amount the insurer will pay. *State Farm Mut. Auto. Ins. Co. v. Sommers*, 954 S.W.2d 18, 20 (Mo. Ct. App. 1997) ("Limit of Liability language clearly sets a maximum amount which may be paid, while the Other Underinsured language clearly sets forth the criteria for underinsured motorist coverage. Thus, Limit of Liability, specifying the most the company will pay, and Other Underinsured specifying criteria for underinsured motorist payment are not duplicitous, uncertain or indistinct."); *Graham v. State Farm Mut. Auto. Ins. Co.*, 376 S.W.3d 32, 37 (Mo. Ct. App. 2012) (same). Accordingly, Safeco's "Limit of Liability" provision is not inconsistent with the "Other Insurance" provision because the former sets a maximum limit on how much Safeco will pay and the latter specifies criteria for UIM coverage.

The absence of language in the "Exclusions" section discussing how much Safeco will pay when other UIM coverage applies also does not make the policy ambiguous. The "Exclusions" section covers situations in which Safeco will never provide UIM coverage. The "Other Insurance" section, on the other hand, does not provide an "exclusion" to coverage, but rather an explanation for how the Safeco policy works when other UIM coverage applies.

Johnson cites several cases holding that a set-off must be clearly communicated in the Declaration Pages or Limit of Liability provisions. These cases are distinguishable because they involve policies containing "(1) express language indicating the insurer will indeed pay up to the declarations' listed limit amount; and (2) set-off provisions ensuring the insurer will never be obligated to pay such amount." *Craig*, 514 S.W.3d at 617. In those cases, the "ambiguity arises from the

-15-

fact that both statements cannot be true; either the insurer will sometimes pay up to the declarations listed limit, or the amount it will pay always will be limited by the amount paid by the underinsured motorist." *Id.*; *see also Manner*, 393 S.W.3d at 66 ("Insurers' construction of the policy would permit the policy to promise to pay the full limits of liability and yet these limits never would be paid as the amount of liability promised always would be reduced by the recovery from the other driver."). Safeco's policy does not contain two provisions that could not both be true because Safeco neither promises to pay the full amount of liability nor always reduces coverage such that Safeco will never be obligated to pay the full UIM coverage.

Johnson's coverage from Safeco is not illusory. It is undisputed that Safeco, providing excess coverage in this case, would pay Johnson if her primary coverage from Travelers was less than the highest applicable limit for all UIM coverage. The district court provided an example of this using slightly modified facts:

> [I]f the Travelers' policy provided UIM coverage limited to $50,000 (instead of $1,000,000), no other collective UIM insurance were applicable, and Travelers paid Plaintiff $50,000, Defendant would pay UIM benefits to Plaintiff. However, pursuant to the policy, Plaintiff's recovery would be limited to the "highest applicable limit" provided by either (Travelers' or Defendant's) policy. In this hypothetical, the highest applicable limit for UIM insurance would be $250,000, as set forth in Defendant's policy. Once Travelers paid its UIM liability limits to Plaintiff, Defendant would then be obligated to pay Plaintiff $200,000 in UIM insurance. Thus, Plaintiff would receive the benefit for which her husband contracted—i.e., a total of $250,000 in UIM insurance.

*Johnson v. Safeco Ins. Co. of Ill.*, 390 F. Supp. 3d 988, 994 (W.D. Mo. 2019). Moreover, as Safeco argues, Johnson could receive the full $250,000 if she did not have other UIM coverage. And if Safeco's coverage applied on a primary basis, she could receive the full amount if its limit of $250,000 was the highest applicable limit or if the other excess UIM coverage had a limit greater than $250,000. Accordingly, Safeco's anti-stacking provision does not preclude Safeco's excess coverage from

ever applying—it simply prevents Johnson from stacking coverage from different policies when she has already received the highest applicable limit of UIM coverage.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's decision.

_____